**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**BOYD H. COLLUMS**                                                                       **PLAINTIFF**

   **V.**                                                                               **CAUSE NO: 1:06-cv-138-EMB**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Boyd H. Collums seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding his application for disability benefits under Title II and supplemental security income ("SSI") under Title XVI. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having duly considered the submissions of the parties, the administrative record and the applicable law, rules as follows.

## Procedural History

Plaintiff protectively filed applications for disability benefits under Title II and SSI benefits under Title XVI on April 21, 2003, alleging an amended disability onset date of March 21, 2003. (Tr. 13, 50-52, 288-93). The applications were denied initially and on reconsideration. (Tr. 26-40, 294).

In a hearing decision dated August 22, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act. (Tr. 13-19). The ALJ's hearing decision

became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 24, 2006. (Tr. 5-8). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Act, 42 U.S.C. § 405(g).

## Facts

Plaintiff was born March 23, 1965 (Tr. 50) and was 40 years of age at the time of the hearing decision on August 22, 2005. (Tr.19). He completed the 12th grade but was one-half credit short of graduation. (Tr. 65, 81, 331). Plaintiff previously worked as an upholsterer, lighting technician, and dock worker. (Tr. 60).

Plaintiff alleged that he could no longer work due to a neck impairment and a mental impairment. (Tr. 59). However, after a review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 327-47), and the testimony of a vocational expert (Tr. 347-55), the ALJ found Plaintiff not disabled. (Tr. 13-19). Contrary to Plaintiff's allegation of disability, the ALJ found that he had the residual functional capacity ("RFC") to perform a range of medium work activity. (Tr. 15, Finding No. 5). The ALJ also found that Plaintiff had the following non-exertional limitations: Plaintiff could frequently tolerate climbing, crawling, overhead reaching, and bilateral working. (Tr. 15, Finding No. 5). Non-exertional limitations included the following mental limitations: Plaintiff could not tolerate complex tasks and instructions as found in semi-skilled work, but could occasionally tolerate detailed tasks and instructions as found in semi-skilled work. (Tr. 15, Finding No. 5). Additionally, Plaintiff could perform simple, routine, repetitive, entry-level work and instructions, but could not tolerate face-to-face contact with the general public in the workplace as a condition of employment, but could occasionally tolerate telephonic contact with the general public from the workplace as a condition of employment. (Tr. 15, Finding No. 5). Plaintiff could also occasionally tolerate

2

changes in the work setting/assignments and close teamwork in tandem with co-workers. (Tr. 15, Finding No. 5).

Based upon this RFC, and the testimony of a vocational expert, the ALJ found that Plaintiff could perform the jobs of assembler (D.O.T. # 780.687-024), stock handler (D.O.T. #910.687-104), and farm worker (D.O.T. # 409.687-014). (Tr. 18).

## Law

The function of this Court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Spellman*, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Villa*, 895 F.2d at 1022; *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## **Analysis**

Plaintiff lists three issues for this appeal in his Brief. (Pl.'s B. 1). Yet these issues may be summed up into one: Did the ALJ err in adopting the opinion of the state agency non-examining psychologist over the opinions of Plaintiff's treating physician and of the examining medical specialist? The Court has reviewed all of the evidence and finds no reversible error.

Plaintiff underwent a comprehensive mental status examination on August 7, 2003. (Tr. 169). The examination was conducted by Trudi Zaplac Porter, J.D., Ph.D., who noted that Plaintiff drove himself to the appointment but arrived in an unkempt and disheveled manner. (Tr. 169). Plaintiff reported having suicidal thoughts and anxiety attacks. (Tr. 170). Dr. Porter noted that Plaintiff avoided other people because he felt too irritable and hopeless to interact with others. (Tr. 170). Yet, Dr. Porter found that Plaintiff communicated well enough to get his basic needs met; he was independent with transportation and appointments; and he did not have a

4

problem handling money. In light of Plaintiff's reports that he "snaps" and does things out of character when angry, Dr. Porter noted that Plaintiff had "episodic periods of violent behavior." (Tr. 170-171). Dr. Porter also found Plaintiff's ability to conform to societal standards, hold employment and adjust to superiors and co-workers impaired. (Tr. 172). Dr. Porter diagnosed Plaintiff with post traumatic stress disorder and found him extremely impaired in his ability to function in an employment setting. (Tr. 173).

Plaintiff had hospital admissions for depression and anxiety in August 2003 and February and March 2005. (Tr. 175-77, 265, 303-04). In August 2003, Plaintiff presented to the emergency room, reporting that he felt like he was going to lose control. (Tr. 175). He denied suicidal ideations and was otherwise in no acute distress. (Tr. 175). It was noted that he became very upset when his ex-wife refused to let him visit with his daughter. (Tr. 180). Plaintiff admitted to drinking approximately five beers. (Tr. 180). In February 2005, Plaintiff was admitted, reporting thoughts of suicide and "a lot of the same." (Tr. 271). It was noted that Plaintiff had increased illness, a shorter temper and constant pain. (Tr. 271). Hospital records from March 2005 indicate Plaintiff was admitted for "severe depressive symptoms as well as some probable withdrawal symptoms." (Tr. 303). Plaintiff had apparently become dependent upon Xanax and attempted suicide while in jail. (Tr. 309-10). Plaintiff was treated with the detoxification protocol and discharged after five days with a recommendation to follow up with the Regional Mental Health Center. (Tr. 303, 309-11).

Dr. Ken Lippincott completed a Mental Impairment Questionnaire on May 10, 2005, wherein he indicated that Plaintiff had diagnoses of major depression, post traumatic stress disorder and benzodiazepine dependence in remission. (Tr. 279). Plaintiff testified that Dr. Lippincott had been his psychiatrist since his first hospital admission. (Tr. 340-41). As regards medical signs and symptoms, Dr. Lippincott noted, among other things, sleep disturbance, mood

5

disturbance, societal withdrawal or isolation, substance dependence, frequently recurring panic attacks, persistent anxiety, difficulty thinking and concentrating and suicidal ideation or attempts. (Tr. 279-80). Dr. Lippincott further noted Plaintiff was markedly restricted in daily activities, social functioning and concentration and that Plaintiff had three previous episodes of decompensation of extended duration. (Tr. 279-81). Dr. Lippincott indicated that Plaintiff was markedly limited in abilities and aptitudes that would allow for unskilled work due to poor concentration, irritability and severe anxiety. (Tr. 284-85).

In November 2003, Donald Hinnant, Ph.D., a state agency psychologist, examined Plaintiff's medical records and concluded that Plaintiff was not substantially limited. (Tr. 211-13). Dr. Hinnant noted no episodes of decompensation; mild restriction of activities of daily living; mild difficulties in maintaining concentration, persistence or pace; and moderate limitations in maintaining social functioning. (Tr. 208). It was noted that though Plaintiff may not be able to follow complex work instructions, he could understand and remember simple tasks. (Tr. 213). Dr. Hinnant also noted Plaintiff could complete a simple routine for at least two hour periods and follow a schedule without special supervision. (Tr. 213). Nonetheless, he found Plaintiff may have occasional work interruptions due to his psychological symptoms. (Tr. 213). Lastly, Dr. Hinnant noted Plaintiff could not work directly with the general public and could have occasional problems interacting with coworkers and that independent or solitary, low stress work settings were preferable. (Tr. 213).

"Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). Therefore, the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion. *Id*. Moreover, the treating physician's opinions are not conclusive and their opinions

may be assigned little or no weight when good cause is shown. *Id*. at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

As regards Dr. Lippincott's opinion of disability, the ALJ wrote that it was not consistent with treatment records for Plaintiff and was based primarily on Plaintiff's subjective complaints. (Tr. 16). Indeed, the ALJ did not find Plaintiff's subjective complaints credible to the extent that the evidence did not support the frequency and severity of Plaintiff's limitations as alleged. (Tr. 16). The ALJ noted that Plaintiff alleged hallucinations and delusions on a daily basis since 1993 but failed to report such to his physicians or hospital staff and continued to work until 2001. (Tr. 16-17, 118). In August 2003, Dr. Porter noted that Plaintiff was fully oriented and had no hallucinations or delusions. (Tr. 172). The ALJ pointed out that Plaintiff's own statements were contrary to the severity of limitations alleged in that he was able to care for his own personal needs and those of his child; he prepared meals; and he watched television regularly. (Tr. 17, 344). This evidence is, of course, in direct conflict with Dr. Lippincott's finding of marked restriction of activities of daily living. (Tr. 280). The ALJ is not required to accept medical evidence if it is refuted by other evidence in the record, which need not itself be medical in nature. *Wilder v. Chater*, 64 F. 3d 335, 337 (5th Cir. 1995).

Next, Plaintiff argues the ALJ simply ignored the opinion of Dr. Porter because he failed to state reasons for rejecting Dr. Porter's opinion. The Court finds this argument avails Plaintiff very little. The ALJ recognized Dr. Porter's examination of Plaintiff and his finding that Plaintiff was extremely impaired in his ability to function in an employment setting. (Tr. 16). However, the evidence shows that Dr. Porter only saw Plaintiff on one occasion, and much of Dr. Porter's opinion of extreme impairment was based on Plaintiff's subjective complaints. Indeed, the more

7

objective portion of Dr. Porter's assessment, the mental status exam, indicates only "slightly impaired" to "impaired limitations." (Tr. 172-73). And, as indicated by the ALJ's RFC finding, she properly considered Plaintiff's limitations with regard to concentration and working with others.

Lastly, Plaintiff argues it was error for the ALJ to rely on the outdated opinion of the non-examining psychologist because it appears it did take into account Plaintiff's hospitalization in 2003, and the psychologist didn't have the benefit of records regarding Plaintiff's two hospitalizations in 2005. In light of the ALJ's determination that Plaintiff's subjective complaints were not fully credible, this argument also fails. The record indicates that except for Plaintiff's third admission, which was largely secondary to his substance dependence, his admissions were based upon his subjective complaint of feeling like he was losing control. That aside, the non-examining psychologist's opinion is consistent with the credible evidence as a whole in that it addresses Plaintiff's concentration limitations and his limitations with regard to working with others. Ultimately, because the ALJ considered these limitations in determining that Plaintiff could perform other work in the national economy, there is no reversible error and the Commissioner's decision to deny benefits should be affirmed. A final judgment consistent with this opinion will be entered.

This, the 28th day of September, 2007.

/s/ Eugene M. Bogen
U. S. MAGISTRATE JUDGE